[Cite as *State ex rel. McLain v. Indus. Comm.*, 2024-Ohio-5783.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Donald G. McLain, | : | |
| Relator, | : | No. 23AP-533 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 10, 2024

**On brief:** *The Bainbridge Firm*, and *Casaundra L. Johnson*, for relator.

**On brief:** *Dave Yost*, Attorney General, *Natalie Tackett*, and *Daniel Schumick*, for respondent Industrial Commission of Ohio.

**On brief:** *Roetzel & Andress, LPA, Douglas E. Spiker*, and *Corey L. Kleinhenz*, for respondent Priority Designs, Inc.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

JAMISON, J.

{¶ 1} Relator, Donald G. McLain, requests this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order denying McLain's estate loss-of-use compensation and grant McLain loss-of-use compensation pursuant to R.C. 4123.57(B) and 4123.60.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred this matter to a magistrate. The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending that this court

dismiss this action. The magistrate determined that McLain lacked standing to commence or maintain this mandamus action because McLain was deceased at the time this action was brought. Pursuant to Civ.R. 53, McLain objected to the magistrate's decision, and we must independently review that decision to ascertain "if the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

{¶ 3} In his objection, McLain argues that he has standing, despite his death, to file an action for a writ of mandamus because R.C. 4123.60 allows a decedent to seek loss-of-use compensation for services rendered on account of the decedent's last illness and death. McLain misinterprets R.C. 4123.60. That statute permits the administrator to "award and pay an amount, not exceeding the compensation which the decedent might have received" for "services rendered on account of the last illness or death of such decedent." R.C. 4123.60. However, R.C. 4123.60 does not authorize the decedent to initiate a claim for such an award or give the decedent standing to pursue a mandamus action to recover such an award.

{¶ 4} The magistrate correctly determined that McLain's death deprived him standing to sue. As a result of his death, McLain cannot be benefited or injured by this litigation, and consequently, he does not have the real interest in this action necessary for standing to exist.

{¶ 5} Upon review of the magistrate's decision, an independent review of the record, and a careful review of McLain's objection, we find the magistrate properly decided to dismiss this action because McLain lacked standing. We overrule McLain's objection, and we adopt the magistrate's findings of fact and conclusions of law.

{¶ 6} Accordingly, this action is dismissed.

*Objection overruled;*
*action dismissed.*

DORRIAN and BOGGS, JJ., concur.

———————————

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Donald G. McLain, | : | |
| Relator, | : | |
| v. | : | No. 23AP-533 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 25, 2024

---

*The Bainbridge Firm*, and *Casaundra L. Johnson*, for relator.

*Dave Yost*, Attorney General, *Natalie Tackett*, and *Daniel Schumick*, for respondent Industrial Commission of Ohio.

*Roetzel & Andress*, *LPA*, *Douglas E. Spiker*, and *Corey L. Kleinhenz*, for respondent Priority Designs, Inc.

---

IN MANDAMUS

{¶ 7} Relator Donald G. McLain seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders related to relator's application for loss-of-use compensation and to issue an order granting relator loss-of-use compensation pursuant to R.C. 4123.60 and 4123.57(B).

**I. Findings of Fact**

{¶ 8} 1. On August 5, 2022, relator was injured while working for respondent Priority Designs, Inc. when a pressurized tank exploded and hit relator in the head, chest,

and arms. Relator was taken as a category 1 trauma to the Mount Carmel East Emergency Department and emergency surgery was performed.

{¶ 9} 2. An application for workers' compensation benefits was initiated on behalf of relator on August 8, 2022. In a Bureau of Workers' Compensation ("BWC") order dated August 19, 2022, relator's claim was initially allowed for the following conditions: small bowel bucket handle injury; right second, third, fourth and fifth metacarpal fracture; acute hypoxic respiratory failure; hemorrhagic shock; right second finger proximal phalanx fracture; anterior and posterior scalp lacerations; traumatic shock; left acute kidney injury; traumatic subdural hematoma; lactic acidosis; right distal ulna open fracture; pulmonary contusion secondary to blast injury right lung; right chest wall laceration; right acute kidney injury; G5 liver injury; mesenteric hematoma; traumatic brain injury (identified as "TBI"); right distal radial open fracture; and multiple liver lacerations. (Stip. at 62.) The BWC also granted temporary total disability ("TTD") compensation beginning August 6 until September 2, 2022.

{¶ 10} 3. Relator remained hospitalized at the Ohio State University Wexner Medical Center until September 27, 2022, when he died as a result of his injuries sustained in the August 5, 2022 industrial incident. At the time of his death, relator was not married.

{¶ 11} 4. On October 4, 2022, Lucas McLain, relator's son, filed an application for death benefits and/or funeral expenses form with the BWC. There were no dependents, including Lucas, listed on the application. No other children were listed on the application.

{¶ 12} 5. On October 21, 2022, Lucas filed an application for accrued compensation. Lucas completed the portion of the application which contained the following instruction: "Complete this section if you are not a spouse or dependent child and are only requesting reimbursement or payment for services related to the decedent's death." (Stip. at 69.)

{¶ 13} 6. On October 28, 2022, the BWC issued an order granting the October 4, 2022 application. The order awarded payment of funeral expenses up to a certain amount.

{¶ 14} 7. Lucas filed a second application for accrued compensation on December 19, 2022. In this application, Lucas completed the section containing the following instruction: "Complete this section if you are applying on behalf of the decedent's estate." (Stip. at 78.)

{¶ 15} 8. On December 22, 2022, a C-86 motion was filed by "the estate for the decedent injured worker, by and through his attorney" that requested "accrued [TTD] compensation which remains unpaid that are due to the decedent at the time of his death be paid for services rendered on account of the last illness and death of the decedent." (Sic passim.) (Stip. at 79.)

{¶ 16} 9. Also on December 22, 2022, a second C-86 motion was filed by the same attorney requesting "under [R.C.] 4123.60 compensation payable through [R.C.] 4123.57(B) for loss of both arms, both legs, the permanent and total loss of hearing in both ears, and the permanent loss of sight in both eyes." (Stip. at 80.) Among other documentation, this motion was supported by the letter of Carrie Sims, M.D., Ph.D., dated December 13, 2022, and a file review completed by Donato Borrillo, M.D., J.D., M.S., dated December 17, 2022.

{¶ 17} 10. Dr. Sims found that within a reasonable degree of medical certainty and for all intents and purposes, the injuries sustained by relator on August 5, 2022 and the complications that followed "resulted in permanent loss of both upper extremities, both lower extremities, bilateral vision loss, and bilateral hearing loss." (Stip. at 81.) Dr. Sims also found that at the time of relator's death, "he was in a coma with no reasonable chance of recovery." (Stip. at 81.)

{¶ 18} 11. Dr. Borrillo found that the medical record was consistent with relator having permanent loss of all four limbs resulting from the industrial injury of August 5, 2022. In support of this conclusion, Dr. Borrillo found to a reasonable degree of medical certainty that relator "suffered prolonged hemorrhagic and traumatic shock for over a month['s] duration with hypoperfusion and loss of use of all four limbs" and "suffered deconditioning and atrophy with a permanent loss of use anticipated despite any attempt at rehabilitation." (Stip. at 83.) Dr. Borrillo also found that "due to the same industrial injury and massive internal organ injury with hypoperfusion and brain injury (on CT), [relator] suffered a permanent and total loss of use of hearing and eyesight (substantiated by EEG)." (Stip. at 87.)

{¶ 19} 12. In response to a request from the BWC, John C. Mareska, M.D., completed a file review for purposes of addressing the loss-of-use claim. Dr. Mareska rendered the following opinions:

It is my opinion to a reasonable degree of medical probability that there is no objective evidence that [relator] suffered injuries to the spinal cord.

* * *

It is my opinion to a reasonable degree of medical probability that there is no objective evidence that [relator] experienced injuries to the bilateral lower extremities plus the left upper extremity as a result of the August 5, 2022 injury. There is no documentation by history, physical examination findings, or radiographic studies of injuries to those three extremities.

It is my opinion to a reasonable degree of medical probability, that the decedent did suffer injuries to the right upper extremity as a result of the event on August 5, 2022. By physical examination, radiographic studies, and operative reports, [relator] exhibited multiple fractures to the right distal forearm, wrist, hand, and digits.

* * *

It is my opinion to a reasonable degree of medical probability that there was no objective evidence of loss of use of the extremities due to a loss in brain function.

* * *

It is my opinion to a reasonable degree of medical probability that there is no objective evidence that there was a loss of hearing and vision due to a loss of brain function.

* * *

It is my opinion to a reasonable degree of medical probability that there is no objective evidence that [relator] would have suffered loss of use of all four extremities, vision, and hearing due to the physical injuries sustained.

* * *

It is my opinion to a reasonable degree of medical probability that assuming the presence of objective medical evidence that the patient was unable to move his upper and his lower extremities during his lifetime, there is no objective evidence that the decedent's inability to move the upper and lower extremities was caused by traumatic brain injury.

* * *

Assuming there is objective medical evidence that [relator] was unable to hear or see on the right side during his lifetime, it is my opinion to a reasonable degree of medical probability,

> that there is no objective medical evidence that the hearing loss or vision loss was due to traumatic brain injury.
>
> * * *
>
> It is my opinion to a reasonable degree of medical probability that the neurological examinations' objective medical evidence was insufficient to document or support that the decedent was unable to see, hear to right side, or move his upper and lower extremities as being caused by a traumatic brain injury.
>
> * * *
>
> It is my opinion to a reasonable degree of medical probability that it was not possible, to a reasonable degree of medical probability, to determine a permanent and total loss of hearing, vision, and use of all four extremities prior to death.
>
> * * *
>
> It is my opinion to a reasonable degree of medical probability that there is no objective medical evidence of a permanent and total loss of use of all four extremities, vision and hearing on the right side, while [relator] was alive and would not have existed by for [relator's] death[.]

(Stip. at 102-09.)

{¶ 20} 13. In an order dated February 2, 2023, the BWC granted the motion for accrued TTD compensation, finding that TTD compensation would be paid to Lucas for the period from August 6 to September 27, 2022.

{¶ 21} 14. The BWC issued a second order on February 2, 2023, in which the BWC recommended denial of the C-86 motion requesting loss-of-use compensation and referred the claim to the commission for hearing. The BWC noted in the order that "[a]n estate is not a dependent under the law and an estate cannot receive an award that was not awarded during the life of the decedent." (Stip. at 116.)

{¶ 22} 15. On March 17, 2023, a commission district hearing officer ("DHO") issued an order denying the C-86 motion for loss-of-use compensation. Citing R.C. 4123.60 and *Largent v. Sticker Corp.*, 11th Dist. No. 2010-L-061, 2011-Ohio-6094, the DHO found that "the estate is not entitled to loss of use benefits." (Stip. at 235.) The DHO additionally found that at the time of relator's death, "he did not have any dependents for workers' compensation purposes." (Stip. at 235.)

{¶ 23} 16. An appeal from the March 17, 2023 DHO order was filed "by [the] injured worker" on March 30, 2023. Among the reasons listed for the appeal, it was stated that "the estate is not filing this award," but "[r]ather it is being pursued under [R.C.] 4123.60 for [relator's] last illness and death." (Stip. at 237.)

{¶ 24} 17. On April 29, 2023, a commission staff hearing officer ("SHO") issued an order affirming the March 17, 2023 DHO order and denying the C-86 motion seeking loss-of-use compensation. In support of the denial of loss-of-use compensation, the SHO made the following findings:

> The [SHO] affirms the finding of the [DHO] that pursuant to R.C. 4123.60 the Decedent's estate is not entitled to loss of use benefits. R.C. 4123.60 provides for benefits in case of death are payable to the Decedent's dependents. In this case, the Decedent Injured Worker had no dependents for purposes of workers' compensation at the time of death as evidenced by the C-5 Application for Death Benefits and/or Funeral Expenses Application, dated 10/04/2022, to the extent that no dependents are listed as dependent on the Decedent for support at the time of death. Similarly, in *LARGENT V. STICKER CORP.*, 2011-Ohio-6094, the state filed a Motion requesting loss of use of the upper and lower extremities. The court held that an estate is not a dependent under the law and that an estate can not receive an award that was not awarded during the life of the decedent.

(Stip. at 246.)

{¶ 25} On May 23, 2023, the commission issued an order refusing "the Injured Worker's appeal" from the April 29, 2023 SHO order. (Stip. at 249.)

{¶ 26} 18. Relator's mandamus complaint was filed in this court on September 1, 2023. The complaint listed relator's name—not the estate—in the case caption. The body of the complaint reflected that it was brought by "Relator, Donald G. McLain." (Compl. at 1.) The complaint contained the following allegations:

> Mr. McLain passed away on September 27, 2022, due to blunt force injuries to his chest and abdomen caused by the pressurized industrial tank explosion at work on August 5, 2022. * * *
>
> On December 22, 2022, counsel for Mr. McLain filed a C-86 Motion requesting loss of use/scheduled loss compensation for "loss of both arms, both legs, the permanent and total loss

of hearing in both ears, and the permanent loss of sight in both eyes," pursuant to R.C. 4123.60 and R.C. 4123.57(B).

(Compl. at 4.) The complaint contained the following prayer for relief:

Relator, Donald G. McLain, requests a writ of mandamus (1) ordering the [commission] to vacate its previous orders identified herein; (2) finding the [commission] abused its discretion when it denied the request for scheduled loss/loss of use compensation; (3) finding Mr. McLain is entitled to scheduled loss/loss of use compensation pursuant to R.C. 4123.60 and R.C. 4123.567(B); (4) ordering the [commission] to issue a new order awarding the requested loss of use/scheduled loss compensation; and (5) granting any other relief to which he is entitled.

(Compl. at 6-7.) The only reference in the text of the complaint itself to relator's estate appears in the summary of the DHO's March 17, 2023 order. There is no mention in the complaint that the mandamus action is being brought by the estate.

## II. Discussion and Conclusions of Law

{¶ 27} Before considering whether relator has demonstrated entitlement to a writ of mandamus, it is necessary to address a preliminary question: whether relator has standing to bring this action.

{¶ 28} " 'Standing' is defined at its most basic as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' " (Bracketed text in original) *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27, quoting *Black's Law Dictionary* (8th Ed.2004) 1442. "A party must establish standing to sue before a court can consider the merits of the claim." *State ex rel. Ohio Stands Up!, Inc. v. DeWine*, 167 Ohio St.3d 248, 2021-Ohio-4382, ¶ 5. *See Eichenberger v. Woodlands Assisted Living Residence, LLC*, 10th Dist. No. 12AP-987, 2013-Ohio-4057, ¶ 14 (stating that in order to commence a lawsuit, a party must possess both standing and capacity to sue).

{¶ 29} "A party lacks standing unless [the party] has, in an individual or representative capacity, 'some real interest in the subject matter of the action.' " *State ex rel. Ames v. Portage Cty. Bd. of Revision*, 166 Ohio St.3d 225, 2021-Ohio-4486, ¶ 10, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176 (1973), syllabus. "To have standing in a mandamus case, a relator must be 'beneficially interested' in the case." *State ex rel. Hills & Dales v. Plain Local School Dist. Bd. of Edn.*,

158 Ohio St.3d 303, 2019-Ohio-5160, ¶ 9, quoting *State ex rel. Spencer v. E. Liverpool Planning Comm.*, 80 Ohio St.3d 297, 299 (1997). " '[T]he applicable test is whether [a] relator[] would be directly benefited or injured by a judgment in the case.' " (Bracketed text in original.) *Ames* at ¶ 10, quoting *State ex rel. Sinay v. Sodders*, 80 Ohio St.3d 224, 226 (1997).

{¶ 30} "Standing is a jurisdictional requirement; a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court — even a court of competent subject-matter jurisdiction — over a party's attempted action." *State ex rel. Ullmann v. Husted*, 10th Dist. No. 14AP-863, 2015-Ohio-3120, ¶ 14, citing *Bank of America, N.A., v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 22. "A mandamus action brought by a party that lacks standing will be dismissed." *Ames* at ¶ 10.

{¶ 31} A deceased individual lacks standing to sue.[1] *Smith v. Mentor Ridge Health & Rehab.*, 8th Dist. No. 112863, 2023-Ohio-4659, ¶ 29, *appeal not accepted*, 173 Ohio St.3d 1458, 2024-Ohio-1386.[2] As relevant to a mandamus action, this is so because a deceased individual—as opposed to the deceased individual's estate—would not be directly benefited or injured by any judgment rendered in a case. *See generally Greenberg v. Heyman-Silbiger*, 10th Dist. No. 16AP-283, 2017-Ohio-515, ¶ 26 (stating that once an individual has died, "the executor of the estate, as legal representative, stands in the decedent's shoes and may ordinarily prosecute in [their] representative capacity any cause which [the] decedent could have instituted"); *LN Mgt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 955 (9th Cir.2020) (holding that "a party cannot maintain a suit on behalf of, or against, or join, a dead person, or in any other way make a dead person (*in that person's own right, and not through a properly-represented estate or successor*) party to a federal lawsuit" (Emphasis added.)).

---

[1] Perhaps unsurprisingly, research revealed few Ohio cases touching on this topic. Civ.R. 25 may provide some answers as to why this is the case, as will be discussed further below.

[2] Ohio courts have also found a complaint brought by an individual who was deceased prior to being named as the plaintiff to be a nullity. *See Simms v. Alliance Community Hosp.*, 5th Dist. No. 2007-CA-00225, 2008-Ohio-847, ¶ 22 (stating that "if a plaintiff is deceased at the time the complaint is filed, it is a nullity"); *Levering v. Riverside Methodist Hosp.*, 2 Ohio App.3d 157, 159 (10th Dist.1981) (finding the complaint in the action to be "a nullity because there was no party-plaintiff, the named plaintiff having been deceased prior to the filing of the complaint"). *But see Greenberg v. Heyman-Silbiger*, 10th Dist. No. 16AP-283, 2017-Ohio-515, ¶ 26.

{¶ 32} Here, relator lacked standing to commence or maintain this mandamus action because relator was deceased at the time the action was brought. It is noted that the commission raised a defense in its answer that relator lacked standing to bring this mandamus action. The commission reiterated this defense in its merit brief. Despite the commission's asserted defense regarding relator's lack of standing, no argument is made in relator's brief or reply brief that relator possesses the requisite standing to bring or maintain this action.[3] Therefore, as a result of relator's lack of standing, this action must be dismissed. *Ames* at ¶ 10.

{¶ 33} In understanding this result, a discussion of the rule pertaining to substitution may be useful, though no motion for substitution was made in this matter. Civ.R. 25 governs the substitution of parties. With regard to the substitution of a deceased party, the rule provides as follows:

> If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and shall be served on the parties as provided in Civ.R. 5 and upon persons not parties in the manner provided in Civ.R. 4 through Civ.R. 4.6 for the service of summons. Unless the motion for substitution is made not later than ninety days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

Civ.R. 25(A)(1). Furthermore, Civ.R. 25(E) provides in pertinent part: "Upon the death or incompetency of a party it shall be the duty of the attorney of record for that party to suggest such fact upon the record within fourteen days after the attorney acquires actual knowledge of the death or incompetency of that party."

{¶ 34} Under Civ.R. 25,[4] it is apparent that a deceased party, upon notice provided by the deceased party's counsel, must be substituted with a proper party, such as the estate

---

[3] The magistrate notes that at oral argument, in response to a question posed by the magistrate, relator's counsel argued that relator had standing to bring this action. Counsel for the commission reiterated the commission's argument that relator lacked standing.

[4] It has been noted that Civ.R. 25 "is not a model of clarity." (Internal quotation omitted.) *Perry v. Eagle-Picher Industries*, 52 Ohio St.3d 168, 173 (1990).

or personal representative of the deceased party, or the action must be dismissed as to the deceased party. As the Supreme Court of Ohio has explained: "If a decedent's personal representative has not been substituted for the decedent, **the end result is a lawsuit with only one party**. When the court dismisses the action pursuant to Rule 25, it does so because there is, in effect, no opposing party over which the court can properly acquire personal jurisdiction." (Emphasis added.) *Perry v. Eagle-Picher Industries*, 52 Ohio St.3d 168, 173 (1990).

{¶ 35} It is incongruous with the text and purpose of Civ.R. 25 to allow an action to proceed where the attorney filing the action was aware that the named complainant—in this case, the relator—was deceased prior to the filing of the complaint. Indeed, had the death of the complainant occurred during the pendency of the action, it would have been the duty of the deceased complainant's attorney of record to suggest the fact of the death on the record within 14 days after the attorney acquires actual knowledge of the death. Here, relator died on September 27, 2022, over eleven months before the complaint was filed in this matter on September 1, 2023.

{¶ 36} No motion for substitution was made in this matter by any of the parties identified in Civ.R. 25(A)(1). Since no motion for substitution was brought, it is unnecessary to resolve the question of whether that substitution would have been permissible under the rule. However, it is noted that at least one other Ohio court has found that "Civ.R. 25 only provides for the substitution of parties who died while the litigation was pending and does not contemplate the substitution of a new party for one who predeceased commencement of the litigation." *Mentor Ridge*, 2023-Ohio-4659, at ¶ 29. Indeed, the text of Civ.R. 25(A)(1), in which it is stated that a motion for substitution may be brought "[i]f a party dies," suggests that this rule envisions a death occurring after a person was already a party to the lawsuit. Civ.R. 25(E) provides further support for this, since it applies "[u]pon the death * * * of a party." Again, relator's death occurred and was known to relator's counsel prior to the commencement of this action.

{¶ 37} Regardless of questions regarding the applicability of Civ.R. 25, relator lacked standing to commence or maintain this mandamus action, which prevents this court from considering the merits of the claim. *Ullmann* at ¶ 14; *Ohio Stands Up!* at ¶ 5. Because relator lacks standing, this mandamus action must be dismissed. *Ames* at ¶ 10.

{¶ 38} Accordingly, it is the decision and recommendation of the magistrate that this action should be dismissed.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.